The Honorable Bob Watts State Representative Bureau of Legislative Research State Capitol, Room 315 Little Rock, AR 72201
Dear Representative Watts:
This is in response to your request for an opinion regarding the powers of education service cooperatives established under Act 349 of 1985 (A.C.A. 6-13-1001, et seq.) You have asked the following specific questions in this regard:
 (1) Does a cooperative have the authority to purchase and own a building to house the cooperative?
 (2) Does the governing board of an education service cooperative have authority to establish a trust or similar entity which could purchase a building to house the cooperative under a five year amortization plan?
 (3) Does a cooperative have the authority to enter into a lease-purchase arrangement for a building to house the cooperative, and to use base funds to make the lease purchase payments?
 (4) Can participating school districts enter into a lease-purchase arrangement to acquire a building to house an education service cooperative?
Section 10 of Act 349 of 1985, which is codified at A.C.A.6-13-1001, addresses the composition of the board of directors of the education service cooperatives and their various duties and responsibilities. Subsection (c) of 6-13-1006 states in pertinent part that the board of directors ". . . shall exercise general fiduciary responsibilities for the education service cooperative with regard to policies and practices which guard the integrity of the agency and maintain public trust in its operation." These responsibilities include "(r)enting, leasing, or receiving by gift such facilities and buildings as may be required to provide authorized programs and services."
While this language may leave the impression upon initial review that legislative intent was to preclude the purchase of property, closer scrutiny of 6-13-1006 indicates that the board's responsibilities are not limited to those set forth under6-13-1006(d). The opening language of subsection (d) states that "(s)uch (general fiduciary) responsibilities, consistent with funds available, shall include, but not be limited to. . . ." It is also significant to note that included within the items listed in subsection (d) is the responsibility to "(c)arry out such other duties which may be required for the efficient operation of the education service cooperative for which the board is responsible."
A close review of A.C.A. 6-13-1006 thus leads to the conclusion that the board of directors' "general fiduciary responsibilities" are not limited to those set forth under subsection (d) and that these responsibilities could conceivably include the purchase, whether through a trust or lease-purchase arrangement, of a building to house the education service cooperative. It would be unreasonable in light of the language of 6-13-1006 to conclude that the "general fiduciary responsibilities" could under no circumstances include such a purchase of property.
A determination with regard to the prudency of such a purchase would, of course, have to be made by the board based upon all of the particular circumstances. It should be noted in this regard that the board must exercise it [its] general fiduciary responsibilities ". . . with regard to policies and practices which guard the integrity of the agency and maintain public trust in its operation." A.C.A. 6-13-1006(c). And as previously noted, the board's responsibilities include carrying out other duties required for the "efficient operation" of the cooperative. The advisability of the purchase should thus be reviewed with these goals in mind.
It is therefore my opinion, in response to your first three (3) questions, that the board of directors would, under the appropriate circumstances, have the authority to enter into an agreement for the purchase of a building to house the education service cooperative.
It is my opinion that the answer to your fourth question is, generally, yes. The authority of the districts to enter into such a purchase arrangement may be premised in part upon the fact that the cooperatives are "intermediate service units" with clear authority to receive and expend school district funds. A.C.A.6-13-1002. While the districts' authority in this regard is not clearly expressed, the legislature has empowered the districts to acquire real property (A.C.A. 6-13-102) and the powers and duties of each district's board of directors include the power to "do all other things necessary and lawful for the conduct of efficient free public schools in the district." Of additional relevance is the following statement of the Arkansas Supreme Court with respect to funds raised for the support of the schools under Article 14, 3
of the Constitution of Arkansas, as amended by Const. Amends. 11 and 40):
 From these cases (citations omitted) it seems clear that any use of these funds raised from taxation that results in benefits to those funds or property or aids in the stated purposes for which these funds may be expended would not be an unconstitutional diversion.
Rainwater v. Haynes, 244 Ark. 1191, 1195, 428 S.W.2d 254 (1968).
It must be recognized, however, that problems may arise if all of the school districts within the cooperative's boundaries do not enter into the agreement but nevertheless utilize and benefit from the facilities. Article 14, 3 of the Constitution of Arkansas could offer a potential basis for challenge in that instance due to its admonition that ". . . no such tax shall be appropriated for any other purpose nor to any other district than that for which it is levied."
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.